**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NICOLE SPROULL, | ) |
| | ) |
| Plaintiff, | )   **2:08-cv-1107** |
| v. | ) |
| | ) |
| GOLDEN GATE NATIONAL SENIOR | ) |
| CARE, LLC formerly known as BEVERLY | ) |
| ENTERPRISES, INC. trading and doing | ) |
| business as BEVERLY HEALTH & | ) |
| REHABILITATION SERVICES, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER OF COURT

Pending now before the Court is the DEFENDANT'S MOTION FOR SUMMARY

JUDGMENT, docket entry number 42 (Doc. # 42), with memorandum in support (Doc. # 43),

concise statement of material facts (Doc. # 44), and appendix (Doc. # 45); PLAINTIFF'S BRIEF

IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. # 47),

with Plaintiff's response to Defendant's concise statement of material facts (Doc. # 48),

Plaintiff's concise statement of material facts precluding summary judgment (Doc. # 49), and

appendix in support of Plaintiff's brief in opposition (Doc. # 50).  In reply to Plaintiff's

responses, Defendant filed a reply brief (Doc. # 52), a response to Plaintiff's concise statement of

facts (Doc. # 53), a response to Plaintiff's response to Defendant's concise statement of facts

(Doc. # 54), and additional excerpts from depositions (Doc. # 55).  In sur-reply to Defendant's

replies, Plaintiff filed a brief in opposition (Doc. # 58) and a response to Defendant's response to

Plaintiff's concise statement of material facts (Doc. #59).  The issues have been thoroughly and

extensively briefed and the motion is ripe for disposition.

## STATEMENT OF THE CASE

With this action, Plaintiff brings claims alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Pennsylvania Human Relations Act, 42 Pa.Cons.Stat. § 951 *et seq.*, alleging that her employment as the Manager of Training and Compliance at Defendant's Central Billing Office was terminated in retaliation for reporting what she considered to be sexual harassment of a non-management employee by other managers within the office, and also that the termination of her employment was the result of gender discrimination.  Defendant denies any wrongdoing, and avers that Plaintiff's employment was terminated for a legitimate and nondiscriminatory reason.  Unless otherwise indicated, the following material facts are undisputed.

1.      **Plaintiff's Employment History with Golden Gate National Senior Care**

Plaintiff Nicole Sproull was employed by Defendant Golden Gate National Senior Care ("Golden Gate")[1] from July 2003 to February 6, 2006.  She began her employment with Defendant in July 2003 as a business office consultant.  Beginning in December 2004 and continuing until the time of her termination, Plaintiff worked at Defendant's Central Billing Office as Manager of Training and Compliance, a supervisory position.  Her supervisor at the time relevant to the Complaint was Melissa Guess, the Regional Director of Business Office Operations.

According to Defendant, the decision to terminate Plaintiff's employment was the result of the findings of an investigation into an allegation that Plaintiff had violated company policy prohibiting the unauthorized disclosure of confidential or privileged information when she

---

[1]  According to Defendant, its correct name is GGNC Administrative Services LLC, d/b/a Northeast Billing Office.

disclosed certain information regarding other employees to one of her subordinates.

**2.      Defendant's policies and procedures**

Defendant maintained a number of policies and procedures relevant to the issues raised by the parties.  For one, Defendant promulgated a Code of Conduct and Business Ethics. Included within this code of conduct are rules regarding confidential information.  In relevant part, this provision noted that "information concerning the management and operation of our business is generally not known to the public or our competitors and should be kept confidential."  The personal information of an associate of the company is cited as an example of confidential information.   For the purpose of protecting confidentiality, the code of conduct includes a number of guidelines, including the rule that confidential information should be shared only with those inside the company whose jobs require them to have access to the information or when the law requires or protects the release of such information.  On August 12, 2004, Plaintiff provided a written acknowledgment that she read the entire code of conduct and understood how the provisions and content related to her position within the company.

Defendant also has a progressive discipline policy.  Within that policy, infractions are categorized into different groups based upon severity.  Category I offenses are considered the most serious kind of infraction.  With category I offenses, an employee is immediately suspended without pay pending an investigation for possible discharge.  In comparison, category II offenses are less serious offenses, and, depending upon the circumstances, may result in a first written warning, a second written warning, or an immediate suspension pending investigation for possible discharge.  The manner in which investigations are conducted  is also defined within the policy and includes, *inter alia*, interviews with witnesses, review of any relevant documents, and affording the subject of the investigation with the opportunity to present her version of what

occurred.  The results of the investigation are reviewed by the employee's supervisor and the

Corporate Human Resources office, and a decision is made regarding what action, if any, is to be

taken.  The unauthorized disclosure of confidential or privileged information concerning the

company or other associates is a category I offense.

Within its corporate human resources manual, Defendant has policies relevant to personal

conduct within the workplace.  The first, policy HR-902, "Unlawful Harassment", broadly

prohibits conduct demonstrating harassment or hostility based upon "sex, race, religion, color,

national origin, ancestry, physical or mental disability, marital status, sexual preference or

orientation, age, or any other basis made unlawful by federal, state, or local law."  The policy

further identifies sexual harassment as one form of the broader category of unlawful harassment.

The policy does not define sexual harassment directly, but explains that sexual harassment

"includes any unwelcome sexual advances or requests for sexual favors, or any other conduct of

a sexual nature when:

- submission to such conduct is made either explicitly or inexplicitly a term of an individual's employment;

- submission to or rejection of such conduct is used as the basis for employment decisions;

- such conduct has the effect of interfering with the individual's work performance;

- such conduct creates a hostile work environment."

Similarly, the policy somewhat indirectly defines a hostile work environment as an environment

that "can be caused by sexually suggestive or lewd remarks, insults, humor and jokes about sex,

hugs, touches or kisses, requests for sexual favors, sexually suggestive or pornographic posters,

cartoons, or drawings and obscene or sexually suggestive body gestures."  The policy requires

that all allegations of unlawful harassment are to be investigated.

3.     **In January 2006, a newly hired employee was inadvertently discharged and subsequently rehired.**

In January, 2006, Defendant hired two new employees.  New employees are required to submit a urine sample for drug screening, which both did in this case.  The samples were tested, the results of which apparently revealed the presence of a banned substance, namely the metabolite for marijuana, in one of the two samples.  Matt Davis, Defendant's Central Billing Office Manager for Insurance and Medicare, terminated the employee thought to be the source of the sample containing the banned substance.  However, due to some unspecified error, the sample was inadvertently associated with the wrong employee.  As a result, the employee who was discharged was the employee whose urine sample did not indicate the presence of the marijuana.  Shortly thereafter, Defendant discovered its mistake.  Manager Davis sought to remedy the error by discharging the other newly hired employee, the one who had been retained as a result of the mistake, and by attempting to contact the previously discharged employee in an effort to offer him reemployment.  Davis' efforts proved successful, and the employee incorrectly associated with the sample results returned to work for the Defendant.

4.     **Investigation into allegation that Plaintiff divulged confidential information**

On January 31, 2006, Michelle Havrilesko, a non-management associate employed under the supervision of Plaintiff, approached Melissa Guess, the Regional Director of Business Office Operations.  Guess was also Plaintiff's immediate supervisor at the time.  Havrilesko made an unsolicited report to Guess that on January 11, 2006, Plaintiff had divulged confidential information to her about the error involving the drug screening results of the two employees referenced above.  In relevant part, Havrilesko reported the following information as revealed to her by Plaintiff: that the wrong employee was discharged originally, although that employee assumed the results of the testing may have applied to him given his previous, albeit relatively

infrequent, use of marijuana; that Davis was upset with respect to the mix-up; that Davis tried several times to contact the discharged employee via telephone; and that Davis decided to drive to the employee's residence if he was unable to contact him by phone.

Having received this information from Havrilesko, Guess contacted Defendant's Regional Employment and Labor Relations Manager Marie Cottrell.  Cottrell advised Guess to suspend Plaintiff pending the outcome of an investigation into the allegations, which Cottrell immediately commenced.  As part of that investigation, Cottrell interviewed a number of employees, including Plaintiff and Havrilesko, and collected written statements.  Havrilesko reiterated the information she previously reported to Guess and provided a written statement on February 3, 2006 which detailed the information she allegedly received from Plaintiff.  The written statement said in relevant part:

> I became aware of a situation involving two newly hired associates through general office conversation.  We were introduced to these employees on their first day of employment, and a couple of days later, they were gone.  As everything does, this also spread like wildfire throughout the office.  We heard that one tested positive on his drug test and was terminated.
>
> On 1/11/06, Nicole Sproull had disclosed additional information as to what had happened *that I had not heard through the office*.  She stated that there had been a mix-up with the test and the wrong employee had been terminated.  She also stated that [the employee originally discharged] had admitted to using marijuana twice a year, once on his birthday and another time that she was not sure of.  So when [the employee] was fired he thought it was legitimate since his birthday was a few weeks prior.  She proceeded to say how upset that Matt was and how he tried to reach [the employee] by phone to inform him of the mix up and ask him to return to his job at the CBO.
>
> This information is as accurate as I can remember, and it is with great hesitation that I am doing this.

See Doc. # 45 at exhibit 12 (Havrilesko written statement)(emphasis added).  For her part, Plaintiff denied divulging confidential information to Havrilesko.  Cottrell also interviewed Davis and Jack Opachick, the Central Billing Office Manager of Medicaid Billing and Pending

Eligibility, both of whom provided written statements to the effect that neither shared

information regarding the mix-up with any other associate.

**5.    Plaintiff meets with supervisor over alleged violations of sexual harassment policy**

Plaintiff's sister, Christina Oliver, also worked at the Central Billing Office at this time.

Oliver began working in the Central Billing Office in March 2004 as a private collector, a

position she continued to hold throughout the operative time period of 2005 and 2006.

According to Plaintiff, on the morning of January 31, 2006, Oliver approached her and reported

that "she couldn't take it anymore", or words to that effect, apparently in reference to, and

understood by Plaintiff to mean, being the recipient of comments directed to her by two other

managers in the Central Billing Office, Jack Opachick and Matt Davis.  Specifically, Oliver

informed Plaintiff that while at work, Davis asked Oliver if he could touch her breasts.  Oliver

also informed Plaintiff that Opachick had also asked to do the same on a different occasion,

apparently mimicking what Davis had said previously.  Following, and as a result of, that

conversation, Plaintiff met with her supervisor, Melissa Guess on the same day.  In this meeting,

Plaintiff raised her concerns to Guess over what she (Plaintiff) considered to be violations of

Defendant's sexual harassment policy, specifically limited to the behavior reported to her by

Oliver.  For the purpose of Plaintiff's cause of action, this meeting is averred to be the protected

activity for which she was subjected to retaliation by Defendant.

While certain details contained within the record about this meeting vary somewhat

between the respective accounts of Plaintiff and Guess, the content of what was discussed, which

is germane to the motion before the Court, is not in dispute.  Likewise, the details that do differ

do not do so in such a way as to constitute a genuine issue of material fact.  For example,

Plaintiff's testimony of when this meeting occurred differs from Guess' testimony.  What is not

in dispute, however, is the fact that on one occasion close in time to January 31, 2006, which was the date when Guess also received the report from Havrilesko regarding Plaintiff's disclosure of confidential information ("the Guess/Havrilesko meeting"), Plaintiff met with Guess to discuss what Oliver had reported to Plaintiff. Further, there is no dispute that this conversation between Plaintiff and Guess occurred prior to the Guess/Havrilseko meeting. For her part, Plaintiff recalls that her meeting with Guess discussing Oliver occurred on the same day (January 31, 2006), yet before, the Havrilesko meeting. Guess, on the other hand, admits that the meeting with Plaintiff occurred before the Havrilesko meeting, but that it was not on the same day. Guess could not further identify the time and date of her meeting with Plaintiff beyond this relative chronological reference. Notwithstanding this mild variation, there is no genuine issue of fact that the Plaintiff/Guess meeting occurred close in time yet before the Guess/Havrilesko meeting.

The Court turns to the content of the discussion between Plaintiff and Guess. At the outset, it is important to note that the behavior complained about by Plaintiff to Guess was not behavior Plaintiff actually witnessed, but was based upon second hand information she received from Oliver on January 31, 2006. Following the conversation with her sister, Plaintiff met with Guess and reported the comments directed to Oliver by Opachick and Davis. According to Plaintiff, she informed Guess that on two different occasions (at the time, Plaintiff did not reveal when these occasions actually occurred), Davis and Opachick individually commented to Oliver about her body, specifically asking to touch her breasts. The first such incident involved Davis and occurred in the office of Shelly Phillips, Oliver's manager at the time.[2] At some unspecified point following the comment in Phillips' office, Opachick asked to do the same, doing so in a

_____

[2] Shortly before the comments were made by Davis to Oliver, she had returned to work following a procedure in which she received breast implants. Further, the occurrence of this procedure was something that was known to the employees of the Central Billing Office.

laughing manner as he moved about the workspace and Oliver was seated at her desk, as if he found the request previously made by Davis to be humorous.  In her meeting with Guess, Plaintiff also provided copies of two sequences of electronic mail message traffic involving Phillips, Oliver, Davis, and other employees, specifically a series of messages and responses that were sent on October 19, 2005 (regarding a luncheon for "Business Office Associate Appreciation Day"on October 20, 2005),[3] and a second series of messages and responses sent on November 1, 2005.[4]  For her part, Oliver testified that she did not tell anyone that she felt the October 19, 2005, email exchange to be offensive.  Similarly, Oliver testified that while she was embarrassed by the November 1, 2005, sequence of messages, she was not offended by it.

Once again, there is some variation between what Plaintiff recalled and what Guess recalled about this meeting.  Plaintiff recalled describing the comments made by both Davis and Opachick to Oliver, while Guess recalled only that Plaintiff revealed the comments made by Opachick, and that Plaintiff did not include the comments made by Davis at that meeting.  What

---

[3]  The relevant portion of the October 19, 2005, series of messages began with a message from Opachick to Shelly Phillips, Christina Oliver, and fellow employees Diane Friend and Michael Morgano.  *See* Doc. # 45 at exhibit 18.  Phillips responded to Opachick and sent a copy of the response to the other recipients.  An exchange between Opachick and Phillips ensued, in which both are joking using terms of sexual innuendo.  The final message in this particular series is from Oliver, and is in agreement with the immediately previous message sent by Phillips to Opachick.

[4]  The relevant portion of the November 1, 2005, series began with a message from Davis to thirty-four (34) employees, including Plaintiff, regarding an upcoming Christmas activity planned for the Central Billing Office.  Within the message, Davis indicated that he would provide the stockings for said event, and further included a individualized effort at humor in the same message directed to Oliver.  *See, e.g.* Doc # 55 at exhibit 29 ("Hello Teammates, I will supply the stockings for the facility.  You guys will be responsible to personalize your stockings.  Oh, and sorry Tina [Oliver], they will not be fishnets.")  Oliver responded in kind individually via electronic mail message to Davis, with a copy sent to Shelly Phillips.  *Id.* ("I might not be what you are shopping for, but you sure would take a glance at my fishnets.") Plaintiff was not included in the response Oliver sent to Davis.  *Id.*

is not is dispute, however, is that based upon the evidentiary record, Plaintiff brought to the attention of Guess that Oliver was the recipient of boorish language, specifically requests to touch Oliver's person, made by a manager (not Oliver's manager) while in the workplace. Furthermore, there is no dispute that the relationship within the workplace between Oliver, Phillips, Opachick, and Michael Morgano commonly involved a level of humor that included crude language or innuendo.[5]

Other aspects of the record provide additional levels of detail that was not actually provided by Plaintiff to Guess during the January 31,2006 meeting, but is important for the decision before the Court.  An investigation was conducted into the allegations raised by Plaintiff.  From the information compiled for that report, the conversation in which Davis made the comments to Oliver occurred on November 1, 2005.  Oliver was interviewed as part of the investigation, as was Opachick and Davis.  The investigation determined that, although clearly inappropriate, the behavior was not sexual harassment because the information collected revealed that these employees socialized together and, further, that it was a common and accepted practice among them to use profane language and sexual banter.  However, a determination was also made that such statements were not acceptable in the workplace, and both Davis and Opachick received written discipline.

Beyond the contents of the record, the record is significant for what it does not contain. Nowhere does Oliver indicate that a term or condition of her employment was altered or effected by the Opachick or Davis comments.  Similarly, no where in the record does Oliver describe her

---

[5] *See* FN 2 and 3.  Further, Oliver, Morgano, and Phillips would communicate with one another via the Defendant's electronic message system utilizing a shared reference of being "naked and rich on the beach" to signify their prospective success with their joint endeavors of purchasing Powerball lottery tickets.  *See* Doc. # 55 at exhibit 29.

working conditions as abusive, nor that she was subject to an adverse action as a result of

denying the requests of Davis or Opachick or for reporting the comments to Plaintiff.

Furthermore, no where does the record reflect that Oliver reported to Plaintiff that the conduct

was so severe or pervasive so as to alter a term or condition of Oliver's employment.  All of the

behavior complained about by Oliver and raised by Plaintiff to Guess occurred and appears to be

isolated to the months of October and November 2005, yet was reported to Plaintiff and passed

along to Guess on January 31, 2006.

## LEGAL ANALYSIS

### A.    Standard of Review

Summary judgment may only be granted if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law.  Fed.R.Civ.P. 56(c).  Rule 56 mandates the entry of summary judgment, after adequate

time for discovery and upon motion, against the party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91

L.Ed.2d 265 (1986).

In considering a motion for summary judgment, this Court must examine the facts in a

light most favorable to the party opposing the motion.  *Int'l Raw Materials, Ltd. v. Stauffer*

*Chem. Co.*, 898 F.2d 946, 949 (3d Cir.1990).  The burden is on the moving party to demonstrate

that the evidence creates no genuine issue of material fact.  *Chipollini v. Spencer Gifts, Inc.*, 814

F.2d 893, 896 (3d Cir.1987).  The dispute is genuine if the evidence is such that a reasonable jury

could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  A fact is material when it might affect the outcome

of the suit under the governing law.  *Id.*  Where the non-moving party will bear the burden of

proof at trial, the party moving for summary judgment may meet its burden by showing that the

evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry

the non-movant's burden of proof at trial.  *Celotex*, 477 U.S. at 322.  Once the moving party

satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings,

and designate specific facts by the use of affidavits, depositions, admissions, or answers to

interrogatories showing that there is a genuine issue for trial.  *Id.* at 324.  Summary judgment

must therefore be granted "against a party who fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the burden

of proof at trial."  *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir.1988) (*quoting*

*Celotex*, 477 U.S. at 322).

Under Title VII, it is unlawful "for an employer to discriminate against any of his

employees ... because [the employee] has opposed any practice made an unlawful employment

practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or

participated in any manner in an investigation, proceeding, or hearing under [Title VII]."  The

Court will consider Plaintiff's Title VII and the PHRA claims together, as both statutes require an

identical analysis under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*,

411 U.S. 792, 802-05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Atkinson v. LaFayette Coll.*, 460

F.3d 447, 454 (3d Cir.2006).

Under the *McDonnell Douglas* framework, an employee seeking to establish a gender

discrimination claim has the initial burden of establishing a prima facie case by showing: (1) that

she was a member of a protected class, (2) that she was qualified for the job, and (3) another

person, not in the protected class, was treated more favorably. To establish a prima facie claim of retaliation, a plaintiff must prove that: (1) she engaged in protected conduct; (2) her employer took an adverse employment action against her; and (3) a causal link exists between her protected conduct and the adverse employment action. *See Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir.2006). An "adverse employment action" under Title VII is an action by an employer that is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir.2001) (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir.1997)). "A tangible employment action [is] also defined by reference to a non-exclusive list of possible actions: 'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Suders v. Easton*, 325 F.3d 432, 434 (3d Cir.2003) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)), *rev'd on other grounds sub nom. Penn. State Police v. Suders*, 542 U.S. 129, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004).

In both cases of gender discrimination and claims of retaliation, where a plaintiff is able to establish a prima facie case through circumstantial evidence, courts undertake a burden shifting analysis. *McDonnell Douglas, supra*. Under this analysis, once a plaintiff has established a prima facie case, the burden of production shifts to the defendant to provide a legitimate and nondiscriminatory justification for the employment decision. *See e.g. Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir.); *cert. denied* , 515 U.S. 1159, 115 S.Ct. 2611, 132 l.Ed.2d 854 (1995). If the defendant provides such a justification, then the burden shifts back to the plaintiff to show by a preponderance of the evidence that the proffered justification is more likely than not a pretext for discrimination. *See Fuentes v. Perskie*, 32 F.3d 759, 763 (3d

Cir. 1994).  More particularly, the plaintiff must point to some direct or circumstantial evidence allowing a reasonable factfinder to either "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  *Fuentes*, 32 F.3d at 764.

**A.      Plaintiff's Retaliation Claims under Title VII and the PHRA**

        1.        Plaintiff has not engaged in a protected activity.

        The question of whether Plaintiff engaged in a protected activity, and thereby satisfied the first element of a retaliation cause of action requires close attention especially in light of the particular facts of this matter.  As Plaintiff correctly noted, the Court of Appeals for the Third Circuit has applied § 2000e-3(a) to protect employee opposition not just to practices that are actually "made ... unlawful" by Title VII, but also to "what an employee believes in good faith to be a discriminatory practice".  *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997). As to the first part of that application, the Court holds that the practices opposed by Plaintiff, namely the two separate incidents of comments allegedly made to Christina Oliver and the two sequences of electronic mail messages in which Oliver actively participated, were not practices made unlawful by Title VII.  Title VII forbids actions taken on the basis of sex that "discriminates against any individual with respect to his compensation, terms, conditions, or privileges of employment" based upon sex.  42 U.S.C. § 2000e-2(a)(1).  Relevant to the claims pending before the Court, the Supreme Court has reiterated time and again that sexual harassment is actionable under Title VII only if it is "so 'severe or pervasive' as to 'alter the condition's of [the victim's] employment and create an abusive working environment.'" *Faragher v. Boca Raton*, 524 U.S. 775, 786, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)(quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 106 S.Ct. 2399, 91 L.Ed.2d 49

(1986)(some internal quotation marks omitted)); *see also, Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 752, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)(only harassing conduct that is "severe or pervasive" can produce a "constructive aleratio[n] in the terms and conditions of employment"); *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)(Title VII "forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's employment").

Context matters when it comes to workplace conduct. "[W]hether an environment is sufficiently hostile or abusive" must be judged "by 'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Faragher v. Boca Raton, supra*, at 787-88, 118 S.Ct. 2275 (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed. 2d 295 (1993)). "A recurring point in [Supreme Court] opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. Boca Raton*, *supra*, at 788, 118 S.Ct. 2275 (citation and internal quotation marks omitted).

The episodes reported to Plaintiff by her sister occurred two to three months prior, involved isolated incidents with people with whom Oliver exchanged this level of humor frequently, in no way were the incidents relayed by Oliver as implicating any term or condition of her employment, nor was it interpreted by Oliver as doing so. For her part, Oliver did not even describe her reaction as offended, nor did she even recall reporting the incidents to anyone (including her own sister). There simply is no evidence in the record to suggest that the behavior directed to Oliver that Plaintiff opposed was severe or pervasive, much less severe or pervasive

such as to alter the terms or conditions of Oliver's employment.  As such, the conduct of which Plaintiff was opposed was not unlawful conduct under Title VII.

The analysis does not stop here, however.  The Court next turns to the second aspect of the application, namely the question of whether Plaintiff in good faith believed that the conduct directed to Oliver to have been a discriminatory practice.  In its motion for summary judgment, Defendant avers that Plaintiff did not engage in a protected activity because "[n]either a reasonable person nor Sproull could have believed that the alleged comments by Davis and Opachick, or the emails that Sproull alleged contained sexual harassment information, violated Title VII's standard."  *See, e.g.*, Doc. # 43.  As Plaintiff notes in her brief in opposition, a party is only required to show that she was opposed to conduct she in good faith reasonably believed to be discriminatory.  Doc. # 47 (citations omitted).  In support, Plaintiff cites a number of decisions consistent with this principle.  *Id.* (citing *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006); *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996); *Drinkwater v. Union Carbide Corp.*, 904 F.2d 853, 865 (3d Cir. 1990)).  Plaintiff further correctly notes that she "need not prove the merits of the underlying discrimination complaint." *Id.*  (quoting *Aman v. Cort Furniture Rental Corp*, 85 F.3d 1074, 1085 (3d Cir 1996)(emphasis added)).  However, these principles alone do not establish that Plaintiff engaged in protected activity.   The Court must consider whether there exists any genuine issue of material fact whether a reasonable and good faith belief was held by Plaintiff that the conduct she opposed violated Title VII.

As to "protected activity," the anti-retaliation provision of Title VII protects those who participate in certain Title VII proceedings (the "participation clause") and those who oppose discrimination made unlawful by Title VII (the "opposition clause").  *Moore v. City of*

*Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006); *Slagle v. County of Clarion*, 435 F.3d 262, 266

(3d Cir. 2006).  Whether the employee participates in a proceeding against or opposes the

employer's behavior, the employee must hold an objectively reasonable belief, in good faith, that

the activity they oppose is unlawful under Title VII.  *Clark County v. Breeden*, 532 U.S. 268,

271, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001)(per curiam)(rejecting retaliation claim where"[n]o

reasonable person could have believed that" the underlying incident complained about "violated

Title VII's standard" for unlawful discrimination); *Moore*, 461 F.3d at 341; *Aman v. Cort*

*Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996)(retaliation plaintiff must "act[] under

a good faith, reasonable belief that a violation existed").

In an unpublished opinion, the Court of Appeals for the Third Circuit cited the *Clark*

*County* decision, recognizing this objective reasonableness requirement. "A plaintiff's belief may

be mistaken, but employer retaliation is prohibited if the allegations of discrimination have an

objectively reasonable basis in fact." *Fogleman v. Greater Hazleton Health Alliance*, 122

Fed.Appx. 581, 583 (3d Cir.2004) *citing Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 121

S.Ct. 1508, 149 L.Ed.2d 509 (2001) and *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307 (11th

Cir.2002).   Furthermore and of importance to the matter *sub judice*, the employee's

"opposition" to unlawful discrimination must not be equivocal.  *Moore*, 461 F.3d at 341; *Barber*

*v. CSX Distribution Servs.*, 68 F.3d 694, 702 (3d Cir. 1995).

Plaintiff testified in her deposition what she discussed with Melissa Guess regarding the

conduct directed to Oliver.  She testified that she reported the comments made by Davis and

Opachick, and provided copies of the electronic mail messages.  More particularly, Plaintiff

testified, "I told her what Tina had stated to me, and I had showed her the e-mails, and she said to

me, 'Are you sure they're not just joking around?'  I said, '*I don't know what it is*, but it needs to

be looked at.'" *See* Doc. # 45 at exhibit 1, deposition transcript of N. Sproull at transcript p. 218 (emphasis added).  This equivocation on the part of Plaintiff, in addition to the other circumstances regarding the reported behavior, distinguish Plaintiff's report to Guess from protected activity under the anti-retaliation provision of Title VII.  To be clear, the Court is not holding that because Oliver herself was not subjected to a hostile work environment, that Plaintiff's claim necessarily fails.  It is holding, however, that when all circumstances are considered, to include the lack of severe or pervasive conduct directed to Oliver, the lack of any alteration to the conditions of Oliver's employment, the lack of any misunderstanding on the part of Plaintiff as to what Oliver was subjected, and the equivocation on the part of Plaintiff in the act of reporting the behavior, there is no genuine issue with respect to the material fact that Plaintiff had no objectively reasonable belief that the behavior reported violated Title VII.  *Cf. Kerstetter v. Pennsylvania Dept. of Corrections, SCI-Coal Twp*., Civ. A. No. 4:08-cv-1984, 2010 WL 936457 (M.D.Pa. Mar. 12, 2010)(while behavior opposed by plaintiff may be improper under a company policy, conduct must be violative of Title VII in order to be protected behavior).

Accordingly, summary judgment will be granted to Defendant with respect to Plaintiff's retaliation claim.

In the alternative, even if Plaintiff did establish a prima facie case, there is no evidence sufficient to raise reasonable doubts regarding Defendant's proffered legitimate, non-discriminatory reason for the termination of her employment.

2.    There is no evidence of pretext to defeat the legitimate, non-discriminatory reason for the termination of Plaintiff's employment.

As noted *infra*, Plaintiff was subjected to an adverse action.  The adverse action in the second element of the prima facie case is one that must be "materially adverse" such that it

18

"might well have dissuaded a reasonable [person in the plaintiff's position] from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68-70, 126 S.Ct. 2405, 2415-16, 165 L.Ed.2d 345, 359-61 (2006).  The Court notes that while this second element contains an objective standard, namely the requirement to consider whether a reasonable person would be dissuaded from making or supporting the charge of discrimination, *Burlington*, 458 U.S. at 67-68, 126 S.Ct. At 2415, this 'objective standard' is not to be confused with the objective requirement of the first element (that the opposition to discrimination be one that has an objectively reasonable basis in fact).  With respect to the second element, determination of materiality is based on the alleged retaliatory act itself, "not the underlying conduct that forms the basis of the Title VII complaint." *Burlington*, 548 U.S. at 69, 126 S.Ct. at 2416, 165 L.Ed.2d at 360-61.  When the record contains no genuine issue of material fact with respect to the lack of an objectively reasonable basis to support the first element of the retaliation claim, there is no genuine issue of material fact that Defendant's action in terminating the employment of Plaintiff on or about February 6, 2006, was materially adverse such that it might well dissuade a reasonable person in Plaintiff's position (assuming she did in fact engage in a protected activity) from making or supporting a charge of discrimination.

For the third element of the prima facie case of retaliation, Plaintiff must show that the adverse action was motivated by "retaliatory animus," *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281, 284 (3d Cir.2000), and that this animus had a "determinative effect" on the complained-of decision.  *Woodson v. Scott Paper Co.*, 109 F.3d 913, 935 (3d Cir.1997).  The Court must consider "a broad array of evidence" in making its determination. *Farrell*, 206 F.3d at 281, 284 (citation omitted).  As an initial matter, Plaintiff must show that the party or parties who took the adverse actions were aware of Plaintiffs' protected activities. *Andreoli v. Gates*, 482

F.3d 641, 650 (3d Cir. 2007); *Weston v. Pennsylvania*, 251 F.3d 420 (3d Cir. 2001)(*citing Jones v. School Dist. of Phila.*, 198 F.3d 403, 415 (3d Cir.1999)). If they were, "unusually suggestive" temporal proximity of the Plaintiffs' and Defendant's actions can by itself establish the necessary causal link. *See LeBoon v. Lancaster Jewish Cmty. Ctr.*, 503 F.3d 217, 232 (3d Cir.2007) (*citing Clark County v. Breeden*, 532 U.S. 268, 273-74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001); *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir.1989)). A gap of two days has been held to be unusually suggestive; a gap of three months is not. *Id.* at 232-33 (citations omitted). Given the evidentiary record, the Court finds that the date of the report by Plaintiff to Melissa Guess, and the date of the Havrilesko meeting with Melissa Guess were close enough in time to one another to satisfy this requirement. Accordingly, and assuming once again that Plaintiff did engage in a protected activity, the record before the Court satisfies the third element of the prima facie case.

Upon the plaintiff's establishment of a prima facie case of discrimination, the burden shifts to the defendant to "'articulate some legitimate, nondiscriminatory reason for the employee's rejection.' " *Farrell*, 206 F.3d at 279 (citing *McDonnell Douglas Corp.*, 411 U.S. at 802). In fact, "[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (U.S.1981) (citing *Board of Trustees v. Sweeney*, 439 U.S. 24, 25, 99 S.Ct. 295, 58 L.Ed.2d 216 (U.S.1978)). To meet this burden, "the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." *Burdine*, 450 U.S. at 255. The Third Circuit has referred to this burden as being a light one. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir.1994). Defendant has met this burden. The Defendant has a progressive discipline policy in place, one that categorizes certain infractions by severity. Per the policy, certain infractions are considered "category I" offenses which trigger an immediate

suspension of an employee pending the results of an investigation.  Unauthorized disclosure of confidential or privileged information is a category I offense.  Marie Cottrell, Defendant's Regional Employment and Labor Relations Manager, conducted the investigation, during which she interviewed seven employees and obtained a number of written statements.  In particular, Havrilesko provided one that reaffirmed the report she made to Melissa Guess on January 31, 2006.  With that information, Defendant concluded that Plaintiff did, in fact, disclose confidential and privileged information to Havrilesko, an employee who had no need to know the information, and determined to terminate Plaintiff's employment.  While Plaintiff continues to aver that she did not share the information with Havrilesko, she did admit that if a manager did disclose to a subordinate confidential information about an employee's drug test results, it could constitute a terminable offense.  Defendant has carried its burden to present a legitimate and nondiscriminatory reason for the employment termination action taken against Plaintiff.

In order to survive summary judgment when an employer has articulated a legitimate, nondiscriminatory reason for its action, a plaintiff must submit evidence from which a reasonable fact finder could either: (1) disbelieve the employer's articulated legitimate reason; or (2) conclude that discrimination was more likely than not a motivating or determinative cause of the employer's action. *See Fuentes*, 32 F.3d at 762; *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 644 (3d Cir.1998); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

To discredit the employer's articulated legitimate reason (the first method of proving pretext), the plaintiff "need not 'produce evidence that necessarily leads to the conclusion that the employer acted for discriminatory reasons, nor produce additional evidence beyond her prima facie case.' " *Simpson*, 142 F.3d at 644 (quoting *Fuentes*, 32 F.3d at 764-65).

21

> To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent. Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons.

*Fuentes*, 32 F.3d at 765 (citations omitted); *see also Simpson*, 142 F.3d at 644; *Keller*, 130 F.3d at 1109 ("[T]he plaintiff must show, not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason."); *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir.2005) (plaintiffs must "present evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision"). There is no evidence in the record to undermine the Defendant's reasonable reliance on the information obtained in the course of its investigation. Furthermore, the procedure followed to investigate the claims made by Havrilesko was consistent with the procedure as promulgated under the Defendant's policy. The investigation was apparently "by the book", for lack of a better way to describe it, and there is no evidence raised by Plaintiff or otherwise reflected in the record to suggest that the proffered reason was not only wrong, but so plainly wrong that it should be disbelieved.

To show that discrimination was more likely than not a cause for the employer's action (the second method of proving pretext), "the plaintiff must point to evidence with sufficient probative force that a factfinder could conclude by a preponderance of the evidence that" the plaintiff's sex and/or other protected trait, "was a motivating or determinative factor in the employment decision." *Simpson*, 142 F.3d at 644. Among other things, the plaintiff may show that the employer: (1) has previously discriminated against her; (2) has discriminated against other persons within the plaintiff's protected class or within another protected class; or (3) that

the employer has treated more favorably similarly situated persons not within the protected class. *Id.* at 645 (citing *Fuentes*).  Plaintiff argues that Defendant was aware that Matt Davis, a manager like her who was outside of the protected class, was treated more favorably than she was for committing the same misconduct.  Specifically, Plaintiff claims that at an earlier point in time (it is not entirely clear when this conversation occurred), she had approached Melissa Guess and informed her that Matt Davis may have disclosed the situation regarding the misidentification of the drug screening results with two of his subordinates, Melissa Frame and Stacey Campbell.

A precise review of the evidence contained within the record is required at this juncture, as the claims made by Plaintiff somewhat blur significant details as to what the record reveals.  In her deposition, Plaintiff testified that, prior to the events of January 31, 2006, she overheard Campbell and Frame talking with one another to the effect that 'the wrong employee was fired.'  The employee who was inadvertently terminated worked for Matt Davis, and worked alongside Campbell and Frame as an accounts receivable specialist in the Insurance and Medicare section of the Central Billing Office.  Plaintiff testified that she did not hear from either Frame or Campbell that the reason for the termination of the employee was related to the results of the drug tests, although Plaintiff knew this to be the reason why.  As it turns out, both Frame and Campbell themselves knew the reason the employee was fired at the time, having learned it from the fired employee himself shortly after he was informed of the termination action.  *See* Doc. # 50 at exhibits 16 (Dep. Tr. of Melissa Frame) and 17 (Dep. Tr. of Stacey Campbell).  Furthermore, neither Frame nor Campbell claimed having learned about the misreporting of the drug screening results from Davis.  *Id.*  While she had her concerns about what Frame and Campbell knew, Plaintiff admitted that when she approached Guess regarding Davis, she did not know the actual source of information being discussed by Frame and Campbell.  Furthermore,

Plaintiff acknowledged (both in her meeting with Guess and with her subsequent deposition testimony) that she did not actually believe that Davis disclosed the information nor did she actually accuse him of doing so to Guess.  Plaintiff more or less noted to Guess that Campbell and Frame apparently knew what happened and that the matter "needed to be investigated" by Guess.  *Id.* at exhibit 1 (Depo. Tr. of Plaintiff) at transcript page number 202.  In the course of conducting the investigation into Plaintiff's alleged disclosure of information, Marie Cottrell also questioned Davis about whether he disclosed the information to any employee.  Davis provided a written statement to the fact that he did not.

Plaintiff's reliance on her "report" to Melissa Guess regarding the awareness by Campbell and Frame of the circumstances regarding the confidential drug testing results is misplaced for the purpose of demonstrating pretext.  In the investigation into her conduct, her own subordinate made a detailed report to Guess that Plaintiff disclosed information directly to her that she (Havrilesko) had no reason to know.  Neither the employee who was inadvertently terminated nor the employee who was inadvertently retained worked in the section with Havrilesko and Plaintiff. The content of the report was detailed enough for Guess to pass along the report to Marie Cottrell, who initiated an investigation.  On the other hand, Plaintiff's somewhat equivocal concerns to Guess regarding Davis' subordinates cannot reasonably be construed as a  charge or allegation against Davis.  Furthermore, neither Frame nor Campbell approached Guess to report a breach of confidential information like Havrilesko did.

Not every difference in treatment will establish a discriminatory intent.  *See Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220, 1232 (10th Cir. 2000).  The distinction here is one of not being similarly situated.  The employee who was terminated originally worked for Davis and in close proximity with Campbell and Frame.  He did not work for Plaintiff, nor did he work

with Havrilesko.  Davis, upon discovering the mistake, actively attempted to remedy it by
contacting the former employee in an attempt to re-employ him.  Plaintiff, on the other hand, had
no part in any of the process to attempt to contact the employee or renew any offer of
employment.  Davis was questioned, and provided a statement that he did not disclose any
information to his subordinates, as Plaintiff did.  However, unlike Plaintiff, there was no specific
charge brought to Guess that Davis did disclose information.  Being generally concerned about
the spread of office gossip by two employees who work for the manager closely involved with
the situation is a different situation from that of an employee, with no involvement in the matter,
who works for another manager (who also had no involvement in the matter), making a relatively
detailed account of a disclosure of confidential information.  These differences undermine
Plaintiff's argument that two different approaches by Defendant establish that Plaintiff's
termination was more likely than not the result of discriminatory animus.

Plaintiff advances various other averments of pretext.  Plaintiff notes the close proximity
in time between the two reports.  While a close proximity in time could weigh in a plaintiff's
favor for the purpose of establishing both the prima facie case and to overcome the employer's
legitimate nondiscriminatory reason, *see e.g. LeBoon*, 503 F.3d at 234, n.10, in this case it does
not.  The sequence of the events is important.  Unsolicited, Havrilesko approached Guess and
reported that Plaintiff committed a category I offense.  Consistent with the Defendant's policies,
the allegation was reported, Plaintiff was suspended, and an investigation was initiated.  That
continuous sequence of events in no way implicates a discriminatory intent in reaction to
Plaintiff's report regarding Oliver.  Plaintiff also challenges the determination made in the
investigation into the disclosure of confidential information.  As the Third Circuit has held, "it is
not enough for a plaintiff to show that the employer's decision was wrong or mistaken, because

the issue is whether the employer acted with discriminatory animus." *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 283 (3d Cir.2001).  While Plaintiff disputes the determination of the investigation, it is undisputed that Defendant based its decision on written statements it obtained from people with knowledge of the situation.

In sum, summary judgment is appropriate for Defendant on Plaintiff's retaliation claim given the lack of any genuine issue of material fact that Plaintiff did not engage in a protected activity.  Even if she did, Plaintiff has failed to adduce sufficient evidence to overcome Defendant's articulated legitimate and nondiscriminatory reason for its decision.

**B.      Plaintiff's Gender Discrimination Claims under Title VII and the PHRA**

With respect to Plaintiff's gender discrimination claim, summary judgment for Defendant is appropriate as well.  Plaintiff's gender discrimination claim relates to the same adverse action as her retaliation claim, namely her employment termination.  Here, Plaintiff avers two bases in support of this claim, 1) that she was treated differently from Davis, who she alleges also divulged the same confidential information yet was not terminated, and 2) that she was treated differently from Davis and Opachick who violated company policy with their "harassment" of Oliver and were not terminated, yet she was terminated for divulging confidential information.

With respect to the argument that Davis also divulged confidential information yet was not terminated, for the same reasons above noted, Plaintiff has failed to meet her burden to overcome the legitimate and nondiscriminatory reason for her termination.  The Court notes that for the purpose of Plaintiff's first allegation of gender discrimination, the record establishes (1) that she was a member of a protected class, (2) that she was qualified for the job, and (3) another person, not in the protected class, was treated more favorably.  Accordingly, the burden shifted to Defendant to articulate a legitimate and nondiscriminatory reason for its decision to terminate

Plaintiff's employment.  While this determination may appear, at first glance, to be inconsistent with the holding regarding Plaintiff's retaliation claim, specifically the holding that Plaintiff and Davis were not similarly situated for the purpose of demonstrating pretext in that claim, there is no such inconsistency.  As the Supreme Court has held, the burden of establishing a prima facie case is not onerous and simply calls for the raising of "an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on consideration of impermissible factors." *Burdine*, 450 U.S. at 253-54 (quoting *Furnco Constriction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978)). If the trier of fact believes the evidence of the prima facie case, and if the defendant is silent in the face of the presumption, judgment is entered for plaintiff because no issue of fact remains.  In other words, a prima facie case in the context of a Title VII claim denotes the establishment of a legally mandatory, rebuttable presumption.  *Id.* at n. 7.

Nevertheless, for the same reasons that the Plaintiff was unable to overcome the legitimate and nondiscriminatory reason for Defendant's action in her retaliation claim, she cannot survive summary judgment on her gender discrimination claim.  The undisputed facts contained within the record underlying the lack of any adverse action taken against Davis does not establish that Plaintiff's termination was motivated by discriminatory animus.  Simply stated, there was no evidence before Cottrell or Guess that Davis did divulge confidential information. In contrast, Defendant did have evidence that Plaintiff committed the offense.  No evidence is contained within the record to show that Defendant had any reason to believe Havrilesko was not trustworthy or that her report was not to be believed.  Plaintiff herself acknowledged that she considered Havrilesko to be a truthful person at the time.  Doc. # 45 at exhibit 1 at transcript page 97.

27

The Court further rejects the argument that Plaintiff suffered gender discrimination when she was fired for divulging confidential information, yet Davis and Opachick were not terminated for their behavior directed to Oliver.  The difference in the nature of conduct on the part of Davis and Opachick as compared to that for which Plaintiff was fired is insufficiently similar to support a claim of discrimination.  *See Dowling v. Citizens Bank*, No. 05-cv-0914, 2007 WL 2752178, at * 8 (W.D.Pa. 2007)(explaining that for a plaintiff to make an argument based upon those similarly situated, the putative characters must have engaged in substantially the same conduct as plaintiff.)

## CONCLUSION

For all of the hereinabove stated reasons, Defendant's Motion for Summary Judgment, Doc. # 42, is **GRANTED**.

An appropriate Order and Judgment follows.

BY THE COURT:

s/ Terrence F. McVerry
United States District Judge

cc:    Samuel J. Cordes, Esquire
       Email: scordes@ocmilaw.com

       Charles M. Roesch
       Email: croesch@dinslaw.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NICOLE SPROULL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **2:08-cv-1107** |
| **v.** | ) | |
| | ) | |
| **GOLDEN GATE NATIONAL SENIOR** | ) | |
| **CARE, LLC formerly known as BEVERLY** | ) | |
| **ENTERPRISES, INC. trading and doing** | ) | |
| **business as BEVERLY HEALTH &** | ) | |
| **REHABILITATION SERVICES, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER OF COURT AND JUDGMENT

AND NOW, this 1st day of April, 2010, in accordance with the foregoing Memorandum

Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED**, that DEFENDANT'S

MOTION FOR SUMMARY JUDGMENT, docket entry number 42,  is **GRANTED**.

Judgment is entered in favor of Defendant, Golden Gate National Senior Care, LLC,

formerly known as Beverly Enterprises, Inc. trading and doing business as Beverly Health &

Rehabilitation Services, Inc., and against Plaintiff Nicole Sproull.

The Clerk of Court shall docket this case closed.

BY THE COURT:

s/  Terrence F. McVerry
United States District Court Judge

cc:    Samuel J. Cordes, Esquire
         Email: scordes@ocmilaw.com

         Charles M. Roesch
         Email: croesch@dinslaw.com.